**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CALVIN B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 20 C 3404** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Calvin B. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court affirms the ALJ's decision.

## BACKGROUND

Plaintiff applied for DIB and SSI on March 9, 2018, alleging in both applications that he became disabled on August 19, 2017 due to a heart attack and a shoulder rotator cuff injury. (R. 205, 233). Born in 1965, Plaintiff was 52 years old at the time of his

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

applications and 53 years old as of the December 31, 2018 date last insured, making him at all times a person closely approaching advanced age (age 50-54). (R. 205); 20 C.F.R. § 404.1563(d); 20 C.F.R. § 416.963(d). He completed one year of college and lives with his daughter and 8-year-old granddaughter. (R. 41-42, 234). Plaintiff's work history dates back to 1985 but his most recent long-term job was maintenance supervisor for a senior assisted living facility, a position he held from June 2000 to November 2013. (R. 228, 234, 244-45). He then worked for a temp service until August 19, 2017 when he suffered a heart attack. (R. 30-31, 233). Plaintiff has not engaged in any substantial gainful activity since that date.

The Social Security Administration denied Plaintiff's applications initially on April 12, 2018, and again upon reconsideration on July 16, 2018. (R. 63-114). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Victoria A. Ferrer (the "ALJ") on February 27, 2019. (R. 26). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Heather Mueller (the "VE"). (R. 28-61). On April 24, 2019, the ALJ found that Plaintiff's status-post myocardial infarction with subsequent stenting, asthma, history of alcohol abuse, and history of right shoulder rotator cuff tear are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-16). After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work involving: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional reaching above shoulder level with the right arm; and no working at high, exposed places. (R. 17). Plaintiff must also avoid irritants or hazardous machines with exposed, moving, mechanical parts. (*Id*.).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform a significant number of jobs available in the national economy, including office helper, order caller, and mail clerk.  (R. 20-21).  As a result, the ALJ concluded that Plaintiff was not disabled at any time from the August 19, 2017 alleged disability onset date through the date of the decision.  (R. 21).  The Appeals Council denied Plaintiff's request for review on April 28, 2020.  (R. 1-5).  That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g).  *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding that the opinion from his treating nurse practitioner Sandre Crain, APN was not persuasive or supported by the record evidence; and (2) improperly evaluated his subjective statements regarding the limiting effects of his symptoms.  For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A.    Standard of Review

Judicial review of the Commissioner's final decision is authorized by the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'"  *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting

3

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019).  The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled."  *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).  The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'"  *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)).  When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required."  *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## B.    Five-Step Inquiry

To recover DIB or SSI, a claimant must establish that he is disabled within the meaning of the Social Security Act.[2]  *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016).  A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[2]    Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

## C. Analysis

### 1. Ms. Crain's Opinion

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that the opinion from his treating nurse practitioner Sandre Crain was not persuasive or supported by the record. Since Plaintiff filed his claims in March 2018, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4)

specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).  An ALJ must explain how she considered the first two factors (supportability and consistency) and may but is not required to explain her consideration of the other factors.  20 C.F.R. § 404.1520c(b)(2).  "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion."  *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)).  "Consistency assesses how a medical opinion squares with other evidence in the record."  *Id*. (citing 20 C.F.R. § 404.1520c(c)(2)).

Ms. Crain completed a Cardiac Residual Functional Capacity Questionnaire for Plaintiff on July 11, 2018.  (R. 512-14).  Plaintiff had a heart attack and underwent an emergency angioplasty and stenting of the coronary artery on August 22, 2017.  (R. 316, 323).  Ms. Crain indicated that since that event, Plaintiff suffers from sharp, left-sided chest pain that comes and goes, as well as fatigue, palpitation, dyspnea, or anginal discomfort causing marked limitation in his ability to engage in even ordinary physical activity.  (R. 512).  More specifically, Plaintiff can:  walk only 2 city blocks without rest or severe pain; sit for no more than 5 minutes at a time before needing to stand up; stand for no more than 5 minutes at a time before needing to sit down or walk around; sit, stand, and walk for a total of less than 2 hours in an 8-hour workday; and never lift more than 5 pounds.  (R. 513).  When sitting for a prolonged period of time, Plaintiff needs to elevate his legs to the height of one pillow for at least 1-2 hours during an 8-hour workday in order to send blood flow back to the heart.  (*Id*.).  In addition, the medications he takes often

cause dizziness, and he suffers from depression that exacerbates his physical condition. (R. 512). According to Ms. Crain, Plaintiff's cardiac symptoms are so severe that they would frequently interfere with the attention and concentration needed to perform even simple work tasks during a typical workday. (R. 512). He is likely to have good days and bad days, would be absent from work more than 4 days per month, and must avoid temperature extremes, humidity, dust, fumes, and pollen. (R. 514).

In finding Ms. Crain's opinion unpersuasive, the ALJ first explained that it was not supported by the overall record. (R. 19). The Court finds no error in this conclusion. Plaintiff went to the Ingalls Memorial Hospital emergency department ("Ingalls ED") on August 22, 2017 complaining of chest pain. A coronary angiogram showed ejection fraction of 45%, 30-40% narrowing in the left circumflex coronary artery, 10-20% narrowing in the left anterior descending artery ("LAD"), and 30% proximal lesion of the first diagonal artery. (R. 18, 317). Sandy Sundram, M.D. performed an emergency left heart catheterization, left ventriculography, bilateral selective angioplasty, and angioplasty and stenting of the coronary artery. (*Id*.). An EKG taken the next day showed normal sinus rhythm and nonspecific inferior T-wave changes. (R. 18, 369). Plaintiff's condition "rapidly improved" following the surgery and he was discharged home in good condition.[3] (R. 325)

On August 28, 2017, Plaintiff saw family medicine specialist Jerome Buster, M.D. and reported that he was doing well with no chest pain, cough, trouble breathing, back pain, depression, or other symptoms. (R. 530, 532). A physical exam was normal, and Dr. Buster instructed Plaintiff to continue taking his medications. (R. 533). About a month

---

[3]     The exact date of discharge is not recorded in the treatment notes.

later on September 24, 2017, Plaintiff returned to the Ingalls ED due to near syncope/dyspnea (fainting/difficulty breathing).  (R. 364, 366, 373).  Plaintiff denied having chest pain, palpitations, or shortness of breath, and a physical exam was largely normal, though a chest x-ray showed hyperexpansion with clear lung fields.  (R. 18, 368-69, 419).  Doctors diagnosed near syncope likely due to dehydration and admitted Plaintiff for observation.  A series of diagnostic tests administered on September 25, 2017 were all essentially normal.   An echocardiogram showed normal ejection fraction, an electrocardiogram revealed improved inferior T-wave changes with no angina, and a CT angiogram of the head and neck and CT of the brain were both unremarkable with no acute findings.  (R. 369, 415, 417).  Plaintiff had a normal EEG on September 27, 2017 (R. 412), and was discharged that day in stable condition with a final diagnosis of vasovagal syncope.  (R. 371).

Plaintiff saw Ms. Crain on November 8, 2017 for medication refill (this is the first documented appointment with her in the record).  (R. 495).  Plaintiff denied having chest pain, palpitations, wheezing, or shortness of breath (R. 496), and a physical exam likewise produced normal heart auscultation without murmurs, rubs, or gallops, and normal breath sounds with no wheezing, rales/crackles, or rhonchi.  (R. 497).  Plaintiff did report muscle aches, but he denied having joint pain, back pain, or swelling in the extremities, and on exam Ms. Crain found normal motor strength and tone, normal gait and station, intact nerves and sensation, normal movement of all extremities, no edema, and normal mood and affect.  (R. 496-497).  A few months later on February 18, 2018, Plaintiff went to the Ingalls ED for near syncope after drinking heavily and was admitted for evaluation.  (R. 18, 423, 433-34).  While there, he had another near syncopal episode

8

when he tried to get up to use the bathroom. (R. 433, 457). A 12-lead EKG showed sinus tachycardia and no acute findings (R. 18, 425), but a chest CT revealed left lower lobe infiltrates. (R. 433, 477). Doctors agreed that Plaintiff had pneumonia and that his complaints of left-sided chest pain were likely due to that condition. (R. 423, 425, 428-29). He was discharged on February 21, 2018 with a final diagnosis of left lower lobe pneumonia, and chest pain with cough likely due to pneumonia. (R. 431).

At his next visit with Ms. Crain on February 28, 2018, Plaintiff was feeling better with no complaints of chest pain, palpitations, cough, shortness of breath, swelling, muscle aches, weakness, dizziness, fatigue, or depression. (R. 491). A physical exam was largely normal: no dyspnea, wheezing, rales/crackles, rhonchi; normal breath sounds; normal heart auscultation with no murmurs, rubs, or gallops; normal gait and station; normal motor strength and tone; normal movement of all extremities; normal reflexes; and normal mood and affect. (R. 491-92). During exams on April 11, 2018 and May 30, 2018, Ms. Crain documented identical findings, except that Plaintiff complained of chest pain "every now and then" at the April visit. (R. 565-67, 569-70). Despite these overwhelmingly normal results with no evidence of fatigue, dyspnea, palpitation, dizziness, depression, or difficulties walking and concentrating, Ms. Crain opined on July 11, 2018 that Plaintiff suffers from all of those symptoms and can barely sit, stand, and walk. (R. 512-13). Notably, when Plaintiff saw Ms. Crain on September 28, 2018 and February 13, 2019, he continued to deny having chest pain, shortness of breath, coughing, wheezing, palpitations, fatigue or depression, and exams remained normal. (R. 557, 558, 561).

Plaintiff largely ignores Ms. Crain's treatment notes, focusing instead on the abnormal diagnostic tests that led to his heart surgery. (Doc. 17, at 4) (citing R. 369). But aside from the two near fainting episodes (one in September 2017 due to dehydration and one in February 2018 due to alcohol consumption and pneumonia), Plaintiff had no documented problems after the August 2017 angioplasty and stenting of the coronary artery. Though Plaintiff presented with coughing, wheezing, dizziness, and rales during his brief hospital stays (particularly when he had pneumonia), those conditions resolved prior to discharge and were not observed during subsequent exams in April 2018, May 2018, September 2018, and February 2019. (R. 18) (citing 323, 368, 373, 383, 429, 432, 456, 570). In such circumstances, the ALJ did not err in discounting Ms. Crain's opinion in part based on "normal chest and lung sounds." (R. 19).

The ALJ also found it significant that Plaintiff consistently presented with normal strength, range of motion, gait, and sensation and only occasionally complained of chest pain (R. 18, 19), which contradicts Ms. Crain's opinion that Plaintiff basically cannot sit, stand, walk, or lift. Plaintiff disagrees, citing his own testimony that he: has sharp, unpredictable chest pains every week; was instructed by his cardiac surgeon to not "do too much" to avoid another heart attack; and struggles with shortness of breath with weather changes and prolonged walking. (Doc. 17, at 5) (citing R. 31-32, 47, 48, 53). In Plaintiff's view, the fact that he has disabling symptoms even when he engages in very little physical activity supports Ms. Crain's conclusion that any exertion would be precluded. (Doc. 20, at 4).

This argument is not persuasive because Plaintiff affirmatively denied having any chest pains, wheezing, coughing, or shortness of breath when he saw Ms. Crain on

November 8, 2017, February 28, 2018, April 11, 2018, May 30, 2018, September 28, 2018, and February 13, 2019.  (R. 491, 496, 557, 561, 566, 569).  And while Plaintiff claims he could barely comb his hair, brush his teeth, or shave without chest pain or shortness of breath, and needed to lie down for 10-15 minutes to relieve the pain (R. 267, 268), he never reported such problems to Ms. Crain or any other medical provider.  In fact, Ms. Crain advised Plaintiff to exercise by walking for 30 minutes 3 to 5 times per week at the May 2018, September 2018, and February 2019 appointments.  (R. 558, 561, 567).  Moreover, contrary to Ms. Crain's July 2018 opinion that Plaintiff cannot sit for more than 5 minutes at a time, Plaintiff himself reported in a March 2018 Function Report that he can sit for at least 2 hours without having to get up and stand or walk.  (R. 266).  There were no documented changes to Plaintiff's condition between March and July 2018 that would account for the vast difference in functioning.  This, too, undermines the limitations set forth in Ms. Crain's opinion.

Plaintiff next objects that the ALJ committed reversible error by failing to address the length, extent, and nature of his treatment relationship with Ms. Crain, or the frequency of his visits with her.  (Doc. 17, at 8).  To begin, the ALJ was not required to specifically discuss any of these factors in her decision.  20 C.F.R. § 404.1520c(b)(2).  In addition, the ALJ was clearly aware of the length and scope of the treatment relationship as reflected in her recitation of the medical record.  (R. 18-19).  Since the Court is able to trace the ALJ's reasoning regarding Ms. Crain's opinion, she has sufficiently built a logical bridge between the evidence and her conclusion.  *Charles M. v. Comm'r of Soc. Sec.*, No. 19-CV-1178-JES-JEH, 2021 WL 779979, at *3 (C.D. Ill. Mar. 1, 2021) ("The ALJ need not draft a novel to explain her reasoning.  She must minimally articulate it, such that a

reviewing court can trace her reasoning and her decision can be subjected to meaningful review.").

A final reason the ALJ gave for rejecting Ms. Crain's opinion is less compelling, namely, that Plaintiff was unable to explain why he did not have his cardiologist complete the Cardiac RFC Questionnaire. (R. 19). As Plaintiff notes, it does not appear that State agency examiner Liana G. Palacci, D.O. specializes in cardiology, but the ALJ found her April 2018 evaluation persuasive as to Plaintiff's physical functioning. (R. 19, 501-02). The ALJ also accepted the opinions from State agency consultants Vidya Madala, M.D. and Marion Panepinto, M.D., neither of whom is a cardiologist. (R. 19, 69-71, 80-82, 94-96, 107-09).

That said, the ALJ also explained that all of the State agency opinions (called prior administrative medical findings under the new regulations) were consistent with the record evidence, something not true of Ms. Crain's evaluation. (R. 19). Dr. Palacci performed an Internal Medicine Consultative Exam of Plaintiff on April 4, 2018 and reported that he had normal heart and lung sounds with no evidence of rubs, murmurs, rales, rhonchi, or wheezes. Plaintiff also had full strength of 5/5 in all extremities, normal range of motion, normal ability to walk, and normal affect. (R. 501). Dr. Palacci opined that Plaintiff can sit, stand, handle objects, lift, and carry. (R. 502). On April 8, 2018, Dr. Madala found Plaintiff capable of light work involving: occasional lifting of 20 pounds; frequent lifting of 10 pounds; sitting, standing, and walking for about 6 hours in an 8-hour workday; and occasional climbing of ramps, stairs, ladders, ropes, and scaffolds. (R. 69-70, 80-81). Dr. Panepinto affirmed these findings on July 12, 2018. (R. 94-95, 107-08). The ALJ reasonably concluded that the opinions from the State agency examiner and

consultants were supported by, and consistent with objective evidence showing largely normal exams after the angioplasty and stenting procedure, aside from two brief episodes of near syncope. The ALJ thus did not err in incorporating these limitations into the RFC determination, a decision Plaintiff does not separately challenge.

Viewing the record as a whole, the ALJ did not err in concluding that Ms. Crain's opinion is neither persuasive nor supported by the record. Plaintiff may have liked a more detailed discussion of the evidence, but the ALJ provided a sufficient analysis to allow the Court to trace her reasoning. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). As the Supreme Court has noted, "[s]ubstantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). The ALJ's decision satisfies this threshold and Plaintiff's request to remand the case for further consideration of Ms. Crain's opinion is denied.

## 2. Plaintiff's Subjective Statements

Plaintiff argues that the case still requires remand because the ALJ erred in assessing his objective statements regarding his symptoms. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication;

treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms.  20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017).  "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling."  *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)).  "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong."  *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence."  *Grotts*, 27 F.4th at 1278.

Plaintiff first argues that the ALJ applied the wrong legal standard in evaluating his symptoms.  Specifically, the ALJ began by reciting the following language: Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. 17-18).  Plaintiff insists that the phrase "not entirely consistent" is meaningless boilerplate and even indicates that the ALJ placed a higher evidentiary burden on him than the law allows.  (Doc. 17, at 9-10; Doc. 20, at 7-9). This Court disagrees.  The Seventh Circuit has made clear that "[t]he fact that the ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal

citations and quotations omitted).  As discussed below, the ALJ provided several valid reasons for rejecting Plaintiff's statements.

In addition, the ALJ's decision contains language demonstrating her use of the correct preponderance standard.  For example, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."  (R. 17).  This court follows the majority of courts in this district that "have repeatedly rejected the argument that th[e] boilerplate language changes the claimant's evidentiary burden."  *Nina Joyce H. v. Saul*, No. 18 C 4913, 2020 WL 212771, at *8 (N.D. Ill. Jan. 14, 2020); *Aitmus R. v. Saul*, No. 18 C 5735, 2019 WL 4923208, at *7 n.13 (N.D. Ill. Oct. 4, 2019) (collecting cases).

Turning to the substantive analysis, as noted, Plaintiff testified at the February 2019 hearing that he suffers from sharp and unpredictable chest pain on a weekly basis and cannot lift more than 5 pounds.  (R. 19, 31, 49).  He struggles with shortness of breath due to asthma, particularly when the temperature changes or he engages in prolonged walking, and estimates that he can walk about a block and a half.  (R. 17, 47-49).  In a March 23, 2018 Function Report, Plaintiff stated that he has trouble lifting, bending, reaching, kneeling, hearing, stair climbing, completing tasks, remembering things, and getting along with others.  At that time, he estimated that he could walk only half a block before needing to rest for 5 minutes.  (R. 17, 261).  In a March 24, 2018 Cardiac Questionnaire, Plaintiff indicated that he gets short of breath after climbing a flight of stairs, requiring 2-3 minutes to recover, and he can only "sometimes" comb his hair, brush his teeth, and shave without experiencing chest pain or shortness of breath.  (R. 267).

The ALJ first discounted Plaintiff's testimony because it was inconsistent with the objective medical evidence. (R. 18). For reasons stated earlier, the Court finds no error in this assessment. After Plaintiff's heart surgery, he consistently denied having any problems with chest pain, palpitations, wheezing, coughing, or shortness of breath. The only exceptions were the two times he was briefly hospitalized for observation following near fainting episodes in September 2017 and February 2018, and his symptoms resolved prior to his discharge. Moreover, Ms. Crain saw Plaintiff five times after the February 2018 hospitalization, including on February 28, 2018, April 11, 2018, May 20, 2018, September 28, 2018, and February 13, 2019, and her examination findings were entirely normal. (R. 492, 570, 558, 561, 567). Plaintiff fails to explain how these records support his assertion that he can barely sit, stand, walk, or comb his hair. *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record.").

For similar reasons, the ALJ did not err in finding Plaintiff's statements unpersuasive because he received minimal treatment after his heart attack. (R. 18). Receipt of conservative treatment is a legitimate reason to find a claimant not entirely credible, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005), and here, Plaintiff received only routine medication management. Plaintiff objects that the ALJ should have articulated "what type of treatment she expected an individual with Plaintiff's reported symptoms and limitations to pursue." (Doc. 17, at 10; Doc. 20, at 11-12) (citing *Monique B. v. Saul*, No. 19 C 652, 2020 WL 4208112, at *7 (N.D. Ill. July 22, 2020)) (ALJ erred in characterizing the plaintiff's treatment as conservative where she received steroid

16

injections in both knees for pain and her doctors anticipated she would need surgical intervention). But since Plaintiff repeatedly denied experiencing any symptoms at all, the ALJ reasonably concluded that his assertions of disabling chest pain and breathing problems were not credible regardless of any other treatment options. And nothing in the record supports Plaintiff's suggestion that he did not pursue more aggressive treatment due to financial difficulties, as evidenced by his SSI application. (Doc. 17, at 10-11; Doc. 20, at 12). Rather, it is apparent from the record that doctors never recommended more aggressive treatment because Plaintiff had no symptoms and exams were normal.

The same analysis applies to Plaintiff's complaints of disabling fatigue and dizziness. Plaintiff once again cites to his two brief hospitalizations for near fainting, and to Ms. Crain's opinion that he experiences fatigue, weakness, and dizziness requiring him to lie down. (Doc. 17, at 12-13; Doc. 20, at 13-14). As explained earlier, Plaintiff's symptoms resolved prior to discharge, he did not make further complaints of dizziness or fatigue to his treaters, and the ALJ reasonably rejected Ms. Crain's opinion since it was unsupported by the medical evidence, including her own treatment notes showing normal exams from February 28, 2018 forward.

Plaintiff finally objects that the ALJ improperly equated his ability to perform certain activities of daily living with an ability to work. (Doc. 17, at 11-12; Doc. 20, at 12-13). This is incorrect. The ALJ simply determined that Plaintiff's ability to shop on his own, manage his hygiene, take care of his dogs, and watch his granddaughter is one factor weighing against the reliability of Plaintiff's statements that he is largely incapacitated by chest pain and breathing problems. (R. 18). The Court finds no error in this analysis. *See Burmester*, 920 F.3d at 510 ("The ALJ did not equate Burmester's ability to perform

certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules.").

"The ALJ's credibility assessment need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)). Viewing the record as a whole, the ALJ provided several valid reasons for discounting Plaintiff's complaints of disabling symptoms, and that decision is supported by substantial evidence.

## **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is denied, and Defendant's Motion for Summary Judgment [18] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: July 29, 2022

SHEILA FINNEGAN
United States Magistrate Judge